UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------

| | |
|---|---|
| In re | Chapter 7 |
| MURDOCH SECURITY & INVESTIGATIONS, INC., | Case No. 12-35747 (CGM) |
| Debtor. | |

------------------------------------------------------------------------
MARK S. TULIS, as Chapter 7 Trustee of
MURDOCH SECURITY & INVESTIGATIONS, INC.,

                         Plaintiff,

        - against -                                  Adv. Pro. No. 12-09094 (CGM)

NAVARRO GROUP LTD., INC,
                        Defendant,
------------------------------------------------------------------------

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF IT'S MOTION
TO DISMISS THE COMPLAINT**

Defendant Navarro Group Ltd., Inc. ("NLGI") submits this memorandum of law in support of its motion to dismiss the Complaint (ECF No. 1) for failure to state a claim for turnover relief under 11 U.S.C. § 542. The motion should be granted, since the Complaint and it's Exhibits confirm that NLGI disputes plaintiff's turnover claim, which is based on alleged payments by the debtor and its president of certain funds pursuant to a disputed contract with NLGI which was already the subject of a contested litigation in the United States District Court for the Southern District of Florida, entitled: <u>Murdoch Security And Investigations, Inc. v. Navarro Group Ltd., Inc., et. al.</u>, Case No. 08-60505 (the "Florida District Court Action").

**BACKGROUND**

On March 28, 2012, Murdoch Security & Investigations, Inc. (the "Debtor") filed a Chapter 7 petition (Compl. para 4). Plaintiff asserts that the Debtor is a New York Corporation

with offices in Connecticut and previously provided security services (Id., para 6); while NLGI is a Florida corporation providing security services with offices in Florida (Id., para 8).

The Complaint alleges that on February 8, 2012, the Debtor and NLGI entered into and signed an asset purchase agreement (the "APA"), which is attached as Exhibit A thereto (Compl. paras 12 & 15, Ex. A).[1] Plaintiff further alleges that pursuant to the APA, the Debtor was to purchase all of NLGI's assets, except for cash on hand (Compl. para 13); and agreed to pay $200,000 at closing (Id., para 14).

The Complaint admits that subsequent to the APA's signing, the Debtor's president, William Vassell ("Vassell"), agreed to pay $25,000, allegedly on the Debtor's behalf, to cover NLGI's salary payments (Compl. para 15). Despite this admission, plaintiff concludes that the Debtor paid $225,000 to NLGI pursuant to the APA (Id., paras 16 & 25).

Moreover, plaintiff concedes that the Debtor sued NLGI for specific performance of the APA in the Florida District Court Action (Compl. para 17, Ex. B), which was subsequently dismissed pursuant to a stipulation of dismissal (Compl. para 17).

Plaintiff states that the Florida District Court issued an Order, dated January 27, 2010 (the "Florida District Court Order" or "Order", a copy of which is attached as Exhibit B to the Complaint), denying the Debtor's motion to reopen the case and to enforce an oral settlement agreement (Compl. para 18).

Plaintiff incorrectly states in at least two (2) places, however, that the Florida District Court Order determined that no valid "agreement" was reached or entered into between the

---

[1] Plaintiff's date of February 8, 2012 for the APA is presumably a typographical error, since the APA indicates that it is made as of February 8, 2008.

2

Debtor and NLGI (Compl. paras 19 & 27), presumably meaning no valid APA. Proceeding from such faulty premise, plaintiff asserts that it is entitled to recover the $225,000 paid under the APA, pursuant to the turnover provisions under 11 U.S.C. § 542. In reality, the Order did not determine the APA's validity, but merely that no valid oral settlement agreement was subsequently reached between the Debtor and NLGI (Compl. Ex. B, pp. 11-14).

Furthermore, the Complaint confirms in at least two (2) places that plaintiff wrote a letter to NLGI, dated July 9, 2012 (the "Demand Letter", a copy of which is attached as Exhibit C to the Complaint), demanding the turnover of the $225,000 within ten (10) days, which NLGI refused to comply with (Compl. paras 23 & 28).

**The Asset Purchase Agreement**

The APA required the Debtor to pay the $200,000 to NLGI's former president, "Nick Navarro" ("Navarro"), individually, and not to NLGI (Compl. Ex. A, § 6.2 (b)). The APA, however, which contains both a merger and no oral modification clause (Id., § 13), omits any reference to Vassell's additional $25,000 payment, allegedly on the Debtor's behalf, to NLGI. Moreover, the Debtor represented and warranted under the APA that it was "validly existing and in good standing under the laws of the State of Florida" (Id., § 7.1). The APA also required the Debtor to pay NLGI total consideration of $3,760,000, which included $2,000,000 of stock in the Debtor[2] (Id., §'s 2.2-2.4).

---

[2] On October 7, 2011, the Securities and Exchange Commission ("SEC") filed a Complaint against the Debtor, Vassell and Robert Goldstein, the Debtor's senior vice president (the "MSI Defendants"), in the United States District Court for the Southern District of New York entitled: <u>Securities And Exchange Commission v. Murdoch Security & Investigations, Inc., et. al.</u>, Case No. 11 Civ. 7076 (the "SEC Action"). The SEC asserted claims against the MSI Defendants for securities fraud based on the illegal sale of the Debtor's stock, which included promises of excessive returns (SDNY ECF No. 1). On the same day, the Court issued an Order

3

**The Florida District Court Order And Action**

The Order highlights the disputed nature of the Debtor's claim against NLGI, as litigated in the contested Florida District Court Action. For example, the Order confirms that NLGI filed an answer (the "Answer"), asserting "numerous affirmative defenses" to the Debtor's Complaint therein, and a counterclaim (the "Counterclaim") for breach of a related agreement involving a "condition precedent" to the Debtor obtaining NLGI's books and records in connection with the APA (Compl. Ex. B, pp. 2-3).

In that regard, NLGI's Answer, filed May 16, 2008 (FLSD ECF No. 13, the relevant excerpts of which are attached as Exhibit 2 to the Declaration of Scott Krinsky, executed on October 19, 2012 ["KrinDec."] & 13-1-2 ), asserted affirmative defenses against the Debtor for fraud, misrepresentation, unclean hands, and inequitable and wrongful conduct, including based on the Debtor's misrepresentations under APA § 7.1 that it was "validly existing and in good standing under the laws of the State of Florida", when its Florida corporate status had been "revoked" on September 15, 2006 for failure to file an annual report (Id., paras 50-56 & 59). The Answer further asserted that the Debtor was seeking usurious interest from Navarro of 168% per year on a note in which he agreed to repay the $225,000 (Id., & FLSD ECF No. 15-2).

Moreover, the Order confirms that there was a dispute between the parties involving the APA which was not resolved. Thus, the Order expressly states in relevant part that: "a dispute arose between the parties which prevented a closing of the APA in February 2008"; and the parties corresponded concerning resolution of the "dispute", but failed to reach a settlement

---

which, among other things, enjoined the MSI Defendants from selling the Debtor's stock and froze the assets of Vassell and Goldstein (SDNY ECF No. 4).

4

(Compl. Ex. B, p. 5, para 2).

The Order further states that Vassell, and not the Debtor, paid the initial $200,000 to NLGI (Compl. Ex. B, p. 5, para 1). The Debtor's counsel likewise confirmed in open Court during an Evidentiary Hearing on November 12, 2009 in the Florida District Court Action, that Vassell, and not the Debtor, wired the $200,000 to NLGI (FLSD ECF No. 87, p. 8[1-3], the relevant excerpts of which are attached hereto as Exhibit 3 to the KrinDec.).

Contrary to plaintiff's assertions, the Order did not determine the validity of the APA. Rather, it merely determined that the parties did not reach a valid oral settlement agreement subsequent to the dismissal of the Florida District Court Action (Compl. Ex. B, pp. 11-14).

## I. THE STANDARD FOR REVIEW

". . . [T]he Second Circuit has stated that '[a] complaint is deemed to include any **written** instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint'". Assante v. Eastern Savings Bank (In re Assante), 470 B.R. 707, 711 (Bankr. S.D.N.Y. 2012)(citing, Sira v. Morton, 380 F.3d 57 (2d Cir. 2004)).[3] "The Court may also consider matters of which the judge may take judicial notice" Assante, 470 B.R. at 711, including court records from a different action. Id. ("The [Bankruptcy] Court may take judicial notice of all documents that make up the record before it, as well as those contained in the record before the Orange County Supreme Court, without needing to convert the motion to one for summary judgment"); see also,

---

[3]  See also, Fed. Rule Civ. Pro. 10(c), made applicable through Fed. Rule Bankr. Proc. 7010, which states that: "A statement in a pleading may be adopted by reference . . . in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

5

Guo Hua Ke v. Morton, 2012 WL 4715211 * 3 (S.D.N.Y. Sept. 30, 2012)("In deciding a Rule 12(b)(6) motion, the 'Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken'").

Moreover, if a complaint's allegations are contradicted by documents that are either attached as exhibits, or incorporated by reference, or that are integral to or referenced in the complaint, the document controls and the allegations are "insufficient to defeat a motion to dismiss". Matusovsky v. Merrill Lynch, 186 F.Supp.2d 397, 400 (S.D.N.Y. 2002); see also, Sazerac Company, Inc. v. Falk, 861 F.Supp. 253, 257 (S.D.N.Y. 1994)("if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint"). "[T]his rule also applies to the instruments supplied by the Defendants in support of their Rule 12(b)(6) motion to dismiss". Sazerac, 861 F.Supp. at 257; and to "documents incorporated by reference". Guo, 2012 WL 4715211 * 3 (citing, Rapoport v. Asia Electronics Holding Co., Inc., 88 F.Supp.2d 179, 184 (S.D.N.Y. 2000)).

Here, the Complaint attaches three (3) Exhibits: the APA (Ex. A); the Florida District Court Order (Ex. B)(which expressly refers to NLGI's Answer, affirmative defenses and Counterclaim); and the plaintiff's Demand Letter (Ex. C). Moreover, the Complaint expressly refers to the Florida District Court Action; the Debtor's claims on the APA therein; the dismissal of the Florida District Court Action; and the Florida District Court's denial of the Debtor's attempt to reopen and enforce an oral settlement agreement therein.

6

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER 11 U.S.C. § 542, SINCE THE COMPLAINT AND IT'S EXHIBITS CONFIRM THAT NLGI DISPUTES THE TURNOVER CLAIM

Plaintiff seeks recovery of alleged sums paid by both the Debtor and Vassell to NLGI pursuant to the disputed APA, which was the subject of the contested Florida District Court Action. Based on such facts, the Complaint asserts only one (1) claim for turnover relief, brought solely under 11 U.S.C. § 542 without specifying which sub-section.

However, "'[i]t is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute' [citation omitted]". Hirsch v. London Steamship Owners' Mutual Life Insurance Association Limited (In re Seatrain Lines, Inc.), 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996)(Sotomayor, D.J.)(defendants' disputed their obligation to pay under insurance contract); Cardali v. Gentile (In re Cardali), 2010 WL 4791801 * 11 (Bankr. S.D.N.Y. Nov. 18, 2010)("the Debtor's reliance on section 542 is facially problematic because that section provides only for the turnover of undisputed debts, and the alleged debt here is clearly disputed"); accord, J.T. Moran Financial Corp., v. American Consolidated Financial Corporation (In re J.T. Moran Financial Corp.), 124 B.R. 931, 938 (S.D.N.Y. 1991)("Where . . . the Court must resolve whether or not the debt claimed is due, the action to collect the disputed funds cannot be regarded as a turnover proceeding . . ."); Fisher v. Insurance Company of State of Pennsylvania (In re Pied Piper Casuals, Inc.), 65 B.R. 780, 781 (S.D.N.Y. 1986)(action to compel payment under disputed insurance contract can not be maintained as a turnover proceeding).

Moreover, Section 542(b) only provides for turnover of "a debt that is property of the estate," and only if such debt is matured, payable on demand, and not subject to setoff. 11 U.S.C.

542(b). Thus, "[S]ection 542(b) only applies to undisputed, liquidated claims". Calka v. Chuu, 2003 WL 1344878 (S.D.N.Y. March 19, 2003); Andrew Velez Construction, Inc., v. Consolidated Edison Company of New York, Inc. (In re Andrew Velez Construction, Inc.), 373 B.R. 262, 273 (Bankr. S.D.N.Y. 2007)("Section 542(b) provides for turnover of undisputed debts"); Hassett v. Bancohio National Bank (In re CIS Corporation), 172 B.R. 748, 760 (S.D.N.Y. 1994)(the language of § 542(b) "create[s] a strong textual inference that an action should be regarded as a turnover only where there is no legitimate dispute over what is owed the debtor").

Furthermore, Section 542(a) only provides for turnover of "property that the trustee may use, sell or lease". 11 U.S.C. 542(a). Thus, "Section 542(a) does not apply if title is disputed." Purchase Media Group v. Guccione (In re General Media, Inc.), 335 B.R. 66, 76 (Bankr. S.D.N.Y. 2005)("If an ownership dispute must be resolved before any relief can be ordered, the proceeding is a non-core replevin action under state law rather than a § 542(a) turnover proceeding."); accord, Andrew Velez , 373 B.R. at 273 ("Further, § 542(a) provides for turnover of 'property that the trustee may use, sell or lease.' 11 U.S.C. § 542(a). Because a disputed debt is not property that the trustee can use, sell or lease, § 542(a) is inapplicable.").

Additionally, a defendant's mere refusal to comply with a demand for turnover implies a dispute. Purchase Media, 335 B.R. at 76 (defendant's refusal, "despite demand, to deliver the property to the plaintiff [the successor to the chapter 11 debtor] . . . implies that he disputes the plaintiff's title" and "forecloses the use of § 542(a).")

Here, the Complaint concedes at least twice (2x) that NLGI has refused to comply with plaintiff's turnover demand, as evidenced by plaintiff's Demand Letter, attached as Exhibit C

thereto (Compl. paras 23 & 28, & Ex. C). Thus, the Complaint on its face implies that NLGI disputed the turnover claim, which by itself requires dismissal.

In Calka, the debtor filed a turnover claim based on its payment of funds to defendant pursuant to a contract. 2003 WL 1344878 * 1. Since the defendant disputed the claim, the Court ruled that § 542(b) did not apply. Id. Here, like in Calka, the plaintiff also seeks turnover of funds paid pursuant to a contract (the APA), which NLGI has disputed for years, as evidenced by both the Florida District Court Order and its refusal to comply with the Demand Letter.

In J.T. Moran, the debtor brought a turnover claim based on defendants' failure to pay past due interest on notes. 124 B.R. at 938. The debtor argued that there was no dispute, since defendants executed the notes and failed to make the quarterly interest payments due thereon. Id. The Court rejected the debtor's argument, however, finding that there was a dispute, since defendants filed answers asserting defenses and counterclaims. Id., pp. 935 & 938. Here, like in J.T. Moran, NLGI also filed an Answer asserting affirmative defenses and a Counterclaim in the Florida District Court Action, as shown in the Order (Compl. Ex. B).

In CIS Corporation, the Chapter 7 trustee asserted turnover claims based on, among other things, the debtor's accidental payment of money to defendant, which should not have been disputed. 172 B.R. at 760. Nevertheless, since the defendant disputed the Trustee's claims, the Court ruled that it "is not a turnover proceeding as defined in § 542 . . ." Id., at 760. Here, NLGI's dispute is far stronger than the defendant's in CIS Corporation, since the payment was not merely accidental but pursuant to a disputed contract (APA).

Moreover, here the facts precluding turnover are far more compelling than any of the previous cited authorities, especially since the Complaint's three (3) Exhibits all confirm NLGI's

9

various disputes. In fact, the Order expressly states that there was a "dispute" between the parties concerning the APA which was not resolved (Compl. Ex. B, p. 5, para 2). The Order also expressly refers to NLGI's Answer, affirmative defenses and Counterclaim (Id., pp. 2-3); and the affirmative defenses include fraud, misrepresentation, unclean hands, and inequitable and wrongful conduct, including based on the Debtor's misrepresentations under APA § 7.1 that it was "validly existing and in good standing under the laws of the State of Florida", when its Florida corporate status had been "revoked" on September 15, 2006 for failure to file an annual report (FLSD ECF No. 13, paras 50-56 & 59; KrinDec. Ex. 2). Furthermore the Order confirms that Vassell, and not the Debtor, paid the $200,000 to NLGI (Compl. Ex. B, p. 5, para 1), which was further confirmed by Debtor's counsel in open Court during an Evidentiary Hearing (FLSD Doc. No. 87, pp. 6-8, KrinDec. Ex. 3); and which raises yet a further dispute as to whether such funds are even property of the Debtor's estate. In fact, the Complaint concedes that Vassell, and not the Debtor, agreed to pay the additional $25,000 to NLGI (Compl. para 15), which likewise raises a dispute as to whether such funds are property of the Debtor's estate, especially since the APA – which contains both a merger and no oral modification clause – does not even mention the additional $25,000 (Compl. Ex. A, § 13). The APA also required that the $200,000 be paid to Navarro, individually, and not to NLGI, which raises another dispute as to whether the Debtor breached the APA. Additionally, the APA required the Debtor to pay $2,000,000 through issuance of its stock to NLGI, and the SEC later sued and enjoined the MSI Defendants, including the Debtor and Vassell, in the SEC Action due to their illegal sale of the Debtor's stock and promise of inflated returns in violation of the securities laws. Finally, and contrary to plaintiff's assertions (Compl. paras 19 & 27), the Order did not determine the APA's validity,

but merely that no valid oral settlement agreement was subsequently reached between the Debtor and NLGI (Compl. Ex. B, pp. 11-14).

## CONCLUSION

The defendant NLGI's motion to dismiss the Complaint, which seeks turnover relief pursuant solely to 11 U.S.C. § 542, should be granted for all the reasons set forth herein.

Dated: New York, New York
October 19, 2012

BACKENROTH, FRANKEL & KRINSKY, LLP

By: s/ABRAHAM BACKENROTH
Abraham Backenroth, Esq. (AB-1989)
Attorneys for Defendant Navarro
  Group Ltd., Inc.
489 Fifth Avenue
New York, NY 10017
(212) 593-1100